ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I (DJ 2025-063A)

| PUERTO RICO AGGREGATE COMPANY, INC., <br><br> Apelante, <br><br> v. <br><br> AGGREGATE, INC., <br><br> Apelada. | TA2026AP00385 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Carolina. <br><br> Civil núm.: SJ2024CV10748. <br><br> Sobre: *injunction* preliminar y permanente. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 27 de mayo de 2026.

En este caso, corresponde evaluar si la parte apelante, Puerto Rico Aggregate Company, Inc. (PRACI), logró o no probar los requisitos pertinentes para la emisión del recurso extraordinario de *injunction* que incoó contra Aggregate, Inc.[1] (Aggregate).

Por los fundamentos que expondremos a continuación **confirmamos**, la sentencia parcial apelada.

I

Este caso inició el **21 de noviembre de 2024**, luego de que PRACI presentara una *Demanda Jurada* contra Aggregate, que fue enmendada el 25 de mayo de 2025[2]. En síntesis, PRACI alegó que Aggregate incumplía con los límites de extracción y almacenamiento establecidos en el Permiso Formal para Extracción de Materiales de la Corteza Terrestre, Número de Caso 2021-375687-PCT-006152 (**PCT**), y el Permiso General para otras Obras, Número 2021-416092-PGO-300198 (**PGO**), al amparo de los cuales

---

[1] Aggregate es una corporación que opera en la industria de agregados, que suple material a la industria de la construcción y a agencias gubernamentales, tales como la Autoridad de Acueductos y Alcantarillados, la Autoridad de Energía Eléctrica, LUMA y a alrededor de 20 departamentos de obras públicas municipales, tanto del área metropolitana, como de Loíza, Río Grande, Fajardo, Ceiba, Vieques y Culebra.

[2] *Véase*, apéndice del recurso, entradas 1 y 53 del *Sistema Unificado para el Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

opera una cantera en ciertas fincas propiedad de PRACI, conocidas como las Fincas Urrutia. Lo anterior, en virtud de un contrato de arrendamiento de fincas rústicas para extracción y proceso de material rocoso, suscrito por las partes litigantes el 31 de agosto de 2017, y con presunta vigencia hasta finales de 2028[3].

Entre tanto, el **12 de diciembre de 2024**, PRACI acudió a la Oficina de Gerencia de Permisos (OGPe) y presentó una solicitud de preconsulta legal, con el fin de que la agencia interpretase el alcance del PCT y en consideración de los límites de almacenamiento de material de corteza terrestre dispuestos en el PGO, el cual, a esa fecha, permitía almacenar hasta 10,000 metros cúbicos diarios de dicho material[4].

La OGPe contestó la preconsulta y concluyó que el permiso que autorizaba cualquier extracción era el PCT, mientras que el PGO era relativo a las medidas de control ambiental, y no sobre la cantidad autorizada a extraer o almacenar. Como corolario de lo anterior, PRACI peticionó a la OGPe una enmienda al PGO para atemperar ambos permisos.

Finalmente, el **26 de diciembre de 2025**, la OGPe emitió un nuevo PGO, según solicitado por PRACI, en el cual redujo el volumen total a almacenar a 1,000 metros cúbicos diarios, de los 10,000 metros cúbicos originales, aumentando el volumen total a extraer a 1,625,527 metros cúbicos[5]. De otra parte, el PCT no sufrió cambios ni enmiendas.

Ahora bien, en su demanda jurada enmendada, PRACI solicitó un *injunction* preliminar para que Aggregate cesara, inmediatamente, de utilizar el PCT y el PGO. Adujo que estos se utilizaban por Aggregate en supuesta violación a sus parámetros, lo que ocasionaba daños ambientales adversos y exponía a PRACI a multas, por ser esta la dueña de dichos

---

[3] Supuestamente, PRACI solicitó o informó de la cancelación del contrato de arrendamiento allá para el 10 de septiembre de 2024. No obstante, el **16 de septiembre de 2024**, Aggregate presentó una Demanda de *Injunction* Posesorio (SJ2024CV08528) en contra de PRACI.

[4] *Véase*, entrada 83, *exhibits* 3 y 4, SUMAC TPI.

[5] *Íd.*, entrada 88, SUMAC TPI.

permisos. Solicitó, además, que se mantuviera así el *statu quo*, hasta tanto se determinara de forma definitiva las supuestas violaciones a los permisos.

Luego de múltiples trámites procesales, el 28 de agosto de 2025, inició la vista de *injunction* preliminar, la cual continuó el 29 de agosto de 2025, y el 9 de diciembre de 2025. Culminada la misma, el Tribunal de Primera Instancia solicitó a las partes que presentaran sendos memorandos de derecho. Según concluyó el tribunal, la controversia a adjudicar en dicha etapa se limitaba a determinar si Aggregate incumplía con los límites de extracción y almacenamiento establecidos en el PCT y el PGO, y, de ser así, si el presunto incumplimiento había causado daños ambientales[6].

Sometido el asunto, el foro primario emitió la sentencia parcial objeto de este recurso, en la que concluyó que PRACI no había satisfecho los criterios que exige una solicitud de *injunction* preliminar y permanente[7]. En particular, consignó que PRACI no había logrado demostrar que Aggregate hubiera excedido los límites de extracción y de almacenamiento impuestos por los permisos en cuestión; tampoco había probado la existencia de un daño irreparable ambiental, ni de cualquier otra clase; que PRACI contaba con un remedio adecuado en ley; y, que no había actuado diligentemente ni con buena fe en la presentación de su recurso extraordinario.

Inconforme, PRACI presentó el recurso que atendemos y formuló los siguientes señalamientos de error:

> PRIMER ERROR: Erró al concluir que la enmienda de la demanda y las actuaciones regulatorias de la parte apelante constituyeron un acto de mala fe, en abierta contravención con la Regla 13.1 de Procedimiento Civil y la jurisprudencia reiterada del Tribunal Supremo de Puerto Rico.

> SEGUNDO ERROR: Erró al apartarse de su determinación previa en cuanto al marco adjudicativo de la controversia, en violación a la doctrina de ley del caso, descartando la causa de acción sin atender el elemento que previamente había identificado como determinante. Al no atender la controversia sobre el volumen de material almacenado el Tribunal de

---

[6] *Véase*, apéndice del recurso, entrada 39 SUMAC TPI.

[7] *Íd.*, entrada 136 SUMAC TPI.

Primera Instancia desatendió por completo la controversia medular del recurso de *injunction*.

TERCER ERROR: Erró al concluir que no existía daño irreparable ni ausencia de remedio adecuado en ley, aplicando incorrectamente los criterios del *injunction* y descansando indebidamente en la reconvención de la parte demandada como supuesto remedio alterno. De esta forma, el Tribunal de Primera Instancia se apartó injustificadamente de la jurisprudencia vinculante del Tribunal Supremo.

Por su parte, Aggregate presentó su alegato en oposición el 14 de mayo de 2026.

Con el beneficio de la comparecencia de las partes litigantes, y la transcripción de la prueba oral (TPO), resolvemos.

II

El *injunction* es un mandamiento judicial que requiere a una persona abstenerse de hacer, o de permitir que se haga, determinada cosa que perjudique el derecho de otra. *Senado de PR v. ELA*, 203 DPR 62, 71 (2019). Véase, además, el Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421.

En cuanto a los criterios para expedir una orden de entredicho provisional o *injunction* preliminar, en las Reglas de Procedimiento Civil, 32 LPRA Ap. V, se dispone que el tribunal deberá considerar, entre otros, los siguientes:

(a) la naturaleza del daño a que está expuesto la parte peticionaria;

(b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;

(c) la probabilidad de que la parte promovente prevalezca;

(d) la probabilidad de que la causa se torne en académica;

(e) el impacto sobre el interés público del remedio que se solicita, y

(f) la diligencia y la buena fe con que ha obrado la parte peticionaria.

Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V.

De otra parte, el interdicto permanente es el remedio extraordinario atendido por un tribunal mediante el trámite de un juicio ordinario o en sus méritos. Con relación a este, el Tribunal Supremo de Puerto Rico ha

expresado que el *injunction*, por su naturaleza de recurso extraordinario, se expide con carácter discrecional y, mientras exista algún remedio eficaz, completo y adecuado en ley, no se considerará el daño como irreparable. *Pérez vda. Muñiz v. Criado*, 151 DPR 355, 372 (2000).

De hecho, en ánimo de codificar los factores que un tribunal deberá evaluar al considerar una petición de *injunction* permanente, la Legislatura enmendó la Regla 57 de Procedimiento Civil y el Art. 677 del Código de Enjuiciamiento Civil; ello, con el fin de atemperar dichas disposiciones a lo dispuesto por el Tribunal Supremo en *Aut. Tierras v. Moreno & Ruiz*, 174 DPR 409 (2008); según reiterado en *Plaza las Américas v. N & H*, 166 DPR 631, 644 (2005).

Mediante la Ley Núm. 132 de 25 de noviembre de 2025, con efectividad inmediata, se adicionó la Regla 57.5 (los restantes incisos de la Regla 57 fueron reenumerados) y se dispuso que el tribunal tiene que considerar, entre otros, los siguientes criterios para determinar si concede o no el *injunction* permanente: (a) si el demandante ha prevalecido en un juicio en sus méritos; (b) si el demandante posee algún remedio adecuado en ley; (c) el interés público implicado; y, (d) el balance de equidades.

Por tanto, queda claro que solo procede conceder una petición de *injunction* permanente si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. *Senado de PR v. ELA*, 203 DPR, a la pág. 72; *Mun. de Loíza v. Sucns. Súarez et* al., 154 DPR 333, 367-368 (2001).

### III

Como apercibimos, los señalamientos de PRACI están dirigidos a establecer que el Tribunal de Primera Instancia erró al concluir que las enmiendas a la demanda y al PGO constituyeron actos de mala fe. Además, que el tribunal violó la doctrina de la ley del caso al apartarse del marco adjudicativo previamente establecido mediante resolución. Finalmente, PRACI pretende impugnar la determinación del foro primario

en cuanto a que no había logrado probar los elementos necesarios para la expedición del recurso extraordinario de *injunction*.

Con relación a su primer señalamiento de error, PRACI arguye que el Tribunal de Primera Instancia no podía considerar las alegaciones contenidas en la demanda original por haberse presentado una demanda enmendada. Sostiene que la actuación de PRACI no solo fue permisible, sino que constituyó el ejercicio legítimo de un derecho procesal que no estaba sujeto a la discreción del tribunal. Por tanto, no podía ser interpretado como un acto de mala fe.

Añadió que la enmienda al PGO, lejos de constituir un subterfugio, había respondido al deber ineludible de PRACI, como titular de los permisos, de armonizar el marco regulatorio aplicable conforme a lo aclarado por la OGPe, y que penalizar esa actuación equivalía a sancionar el cumplimiento de la ley.

Con relación al señalamiento de error discutido, coincidimos con la postura asumida por la parte apelada, que en su alegato sostuvo que el tribunal no había cuestionado en los méritos que PRACI hubiera realizado gestiones para enmendar el PGO, ni mucho menos que enmendara su demanda. El estudio detenido del tracto procesal y la sentencia revela que la falta de diligencia y mala fe señaladas por el foro primario se enmarcaron en las acciones de PRACI, previo y posterior a la presentación de la demanda jurada, las cuales quedaron evidenciadas con la prueba y los testimonios vertidos en las vistas.

Contrario a lo planteado por PRACI, no surge que el foro primario pretendiera con su sentencia parcial sancionar la enmienda de la demanda original, sino que concluyó que PRACI gestionó la enmienda al PGO en diciembre de 2024, para reducir el volumen de almacenamiento permitido, sin que mediara razón alguna para ello, que no fuera crear un supuesto incumplimiento por parte de Aggregate, quien presuntamente operaba conforme a los criterios del PGO original. Ciertamente, no informar de ese

proceso a Aggregate y al tribunal constituyó la mala fe imputada por el foro primario en su sentencia parcial.

Sobre el segundo señalamiento de error, PRACI arguye que el foro primario se apartó del marco adjudicativo previamente establecido. En particular, resalta la resolución interlocutoria del 29 de febrero de 2025, en la que el foro primario dispuso que la controversia a resolver era si Aggregate realizaba extracciones y almacenamiento de materia de la corteza terrestre en exceso de lo establecido en los permisos de extracción, y declaró que para ello bastaba con que se probara la cantidad de material que extraía y almacenaba Aggregate de conformidad con estos.

Por su parte, Aggregate aduce que el planteamiento de PRACI no es más que un argumento sin fundamento jurídico alguno. Resalta que, en su recurso, PRACI meramente discute en el vacío la doctrina de la ley del caso sin evidenciar en el récord su argumento. Sostiene que, contrario a lo planteado por PRACI, el foro primario sí consideró la prueba relacionada con el volumen de material extraído y el cumplimiento con los parámetros relacionados a los permisos. Propone que el problema radica en que PRACI no presentó prueba alguna de que Aggregate rebasara los límites establecidos, mucho menos que la operación causara daños irreparables. Finalmente, añade que el foro primario no violó la doctrina de la ley del caso, pues no había una determinación final, sino una controversia que adjudicar.

Examinada la sentencia parcial y la TPO coincidimos con la parte apelada en cuanto a que el foro primario ciertamente atendió la controversia planteada. No obstante, PRACI no puso en posición al Tribunal de Primera Instancia de determinar que Aggregate hubiera actuado en exceso de los permisos objeto de controversia y que, por tanto, procedía conceder el *injunction*.

Sobre el tercer señalamiento de error, PRACI arguye que el Tribunal de Primera Instancia había errado al determinar que no se había establecido la existencia de un daño irreparable, que justificara la

concesión del remedio extraordinario de *injunction* preliminar. Además, que incidió al considerar que la solicitud de sentencia declaratoria solicitada por Aggregate en su reconvención constituía un remedio apropiado y disponible para atender las controversias planteadas por PRACI.

En miras a persuadir a este foro sobre si las presuntas violaciones al PCT y PCO suponen consecuencias jurídicas concretas para sí, PRACI plantea que la *Ley sobre Política Pública Ambiental*, Ley Núm. 416-2004, según enmendada, 12 LPRA, sec. 8001-8007f, dispone que el peso de la prueba sobre la ausencia de un daño ambiental recae en el proponente de la actividad, en este caso, Aggregate, y no en quien procura la protección del recurso[8]. A su vez, plantea que, de conformidad con la *Ley para Reglamentar la Extracción de Arena, Grava y Piedra*, Ley Núm. 132-1968, según enmendada, 28 LPRA sec. 206-220f, cualquier exceso en los parámetros autorizados constituye una violación directa a la ley, no una mera irregularidad técnica[9].

---

[8] A pesar de que la parte apelante no especificó en su escrito a qué artículo se refería, solo el Art. 4(B)(5)(2), 12 LPRA sec. 8001a, del referido estatuto - sobre deberes y responsabilidades del Gobierno del Estado Libre Asociado de Puerto Rico - hace referencia al peso de la prueba y dispone lo siguiente:

.    .    .    .    .    .    .    .    .

5. Aplicar el principio de la prevención, reconociendo que cuando y donde haya amenazas de daños graves o irreversibles, no se debe utilizar la falta de una completa certeza científica como razón para posponer medidas costo-efectivas para prevenir la degradación ambiental. Esto debe hacerse tomando en consideración las siguientes premisas:

(1) las personas, naturales y jurídicas, tienen la obligación de tomar acciones anticipadas para prevenir daños o peligros;

**(2) el peso de la prueba sobre la ausencia de peligros que pueda causar una nueva tecnología, proceso, actividad o sustancia química recae en el proponente de la misma, no en la ciudadanía;**

.    .    .    .    .    .    .    .    .

(Énfasis nuestro).

[9] La parte apelante tampoco hizo referencia especifica a disposición alguna. No obstante, surge del Art. 13, 28 LPRA sec. 2018, del referido estatuto que:

Cualquier persona, natural o jurídica, asociación o grupo de personas, corporación cuasi pública, departamento, agencia, municipio o instrumentalidad del Estado Libre Asociado de Puerto Rico que personalmente y/o a través de sus agentes, representantes o empleados, realice actividades de extracción, excavación, remoción o dragado de los componentes de la corteza terrestre en terrenos públicos o privados del Estado Libre Asociado de Puerto Rico sin un previo permiso del Secretario del Departamento de Recursos Naturales y Ambientales, incurrirá en delito menos grave y, convicto que fuere, será castigado con multa no mayor de quinientos dólares ($500) ni menor de cien dólares ($100) o con cárcel que no excederá de seis (6) meses o ambas a penas a discreción del tribunal.

Según PRACI, cuando Aggregate excede el volumen autorizado de 1,000 metros cúbicos, no solo incumple con el permiso, sino que también altera el balance ambiental aprobado, crea impactos no contemplados y compromete el plan de restauración. Por tanto, insiste en que el daño alegado no es teórico, ni compensable económicamente, sino, por su propia naturaleza, irreversible. Sobre ello, añade que, en cuanto al daño irreparable, el Tribunal Supremo de Puerto Rico ha sido claro. En particular, reitera que, en *Municipio de Loíza v. Sucesión Marcial*, 154 DPR 333 (2001), estableció que las violaciones a los permisos ambientales constituían daño irreparable *per se*.

Sobre el concepto de remedio adecuado en ley, expresa que la reconvención presentada por Aggregate no podía considerarse un remedio alternativo disponible para PRACI. En particular, por tratarse de un vehículo procesal mediante el cual la parte adversa articula sus propias reclamaciones.

Por su parte, Aggregate arguye que la interpretación de PRACI de la opinión en *Municipio de Loíza v. Sucesión Marcial Suárez* es errada y los hechos que permitieron la conclusión del Tribunal Supremo de Puerto Rico en aquella ocasión resultaban distinguibles de la controversia planteada en el caso de marras. En particular, pues en aquella ocasión se evaluaba la procedencia de una solicitud de *injunction* presentada por dicho Municipio, quien buscaba la paralización de una operación de extracción de arena **que no contaba con un permiso para ello**, y que contravenía expresamente la Resolución Conjunta de 23 de septiembre de 1997, cuyo objetivo era,

---

También constituirá delito menos grave, castigable con las penas arriba indicadas, la violación por parte de los mencionados en el párrafo anterior, personalmente y/o a través de sus agentes, representantes o empleados, de cualquier resolución, decisión u orden dictada por el Secretario o de cualquier condición o requisito establecido en un permiso o de cualesquiera de las disposiciones de esta ley y de los reglamentos promulgados al amparo de las mismas. Cada uno de los días en que continúe la infracción de cualquier disposición, requisito, determinación, orden o reglamento del Secretario o de cualesquiera de las disposiciones de dichas secciones, o decreto final expedido por el Tribunal de Distrito de Puerto Rico, constituirá una infracción separada y distinta. Se concede competencia al Tribunal de Distrito de Puerto Rico para ventilar los delitos establecidos en esta sección.

precisamente, decretar una moratoria en el otorgamiento de permisos de extracción de arena en el Municipio de Loíza.

Aggregate sostiene que, contrario a lo planteado por PRACI, la reconvención presentada por Aggregate y que se atenderá conforme al procedimiento ordinario, no se limita a alegaciones relacionadas con la validez de la cancelación del contrato de arrendamiento. Por el contrario, en la reconvención se plantean otras controversias relacionadas con la demanda enmendada jurada, a saber: el cumplimiento de Aggregate con el PCT; la violación de PRACI al promover una enmienda al PGO, a espaldas de Aggregate y en contravención al contrato de arrendamiento; y, la obligación de PRACI de firmar una serie de autorizaciones para permitir que Aggregate gestionara ciertas enmiendas a los permisos.

Sostiene que, como corolario de lo anterior, y por tratarse de una sentencia declaratoria, la determinación que se tome en el trámite ordinario va a repercutir en los reclamos de ambas partes. Insiste en que, al evaluar las alegaciones de Aggregate en su reconvención compulsoria, el Tribunal de Primera Instancia podrá adjudicar si, en efecto, Aggregate incumplió o no con los permisos en controversia, lo que precisamente impugna PRACI. Por razón de ello, PRACI sí cuenta con un remedio adecuado en ley, por virtud de la sentencia declaratoria que en su día se emita en el curso ordinario de este caso.

En primer lugar, debemos aclarar que los estatutos citados por PRACI, además de carecer de especificidad, parecería que solo pretenden inducir a error a este Tribunal. Ante la solicitud de *injunction* por supuesto daño ambiental, nada en la Ley Núm. 416-2004 dispone que el peso de la prueba de que no existe daño ambiental recaiga, en este caso, sobre la parte apelante.

En cuanto a la Ley Núm. 132-1968, según enmendada, si bien dispone sobre las consecuencias de realizar actividades de extracción, excavación, remoción o dragado de los componentes de la corteza terrestre en terrenos públicos o privados del Estado Libre Asociado de Puerto Rico

sin un previo permiso del Secretario del Departamento de Recursos Naturales y Ambientales, reiteramos que, en esta ocasión, para efectos de la emisión del *injunction*, PRACI no logró establecer que hubiera mediado la extracción de corteza terrestre más allá de la autorizada.

No podemos perder de vista que el *injunction* constituye un remedio extraordinario que solo procede cuando se demuestra claramente el daño irreparable, y en ausencia de otro remedio adecuado en ley. En esta ocasión, PRACI no logró establecer mediante prueba que Aggregate extrajera corteza terrestre en una cantidad mayor a la autorizada, ni tampoco el presunto daño ambiental irreparable. PRACI descansó en la alegación no probada de violación al PGO para establecer que sí había mediado un daño ambiental irreparable; no obstante, PRACI no presentó prueba alguna a esos efectos, por lo que carecía de uno de los elementos esenciales para la concesión de un *injunction*.

En cuanto al remedio apropiado y disponible, coincidimos con el Tribunal de Primera Instancia en cuanto a que PRACI cuenta con el remedio de sentencia declaratoria para atender los reclamos alegados en su demanda jurada. En el referido proceso ordinario se podrá y deberá atender los asuntos relacionados a la violación del contrato de arrendamiento y el cumplimiento con los permisos pertinentes.

Por tanto, coincidimos con el foro de primera instancia respecto a que, en este caso, PRACI no cumplió con los estándares necesarios para emitir el recurso extraordinario de *injunction* preliminar, ni aquellos necesarios para la emisión del interdicto permanente.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia Parcial*, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 13 de marzo de 2026, enmendada el 20 de marzo de 2026, y notificada el 24 de marzo de 2026.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones